OPINION OF THE COURT
Vincent R. Balletta, J.
This application is what can best be described as a postjudgment proceeding. The movant, however, is neither the plaintiff nor the defendant, but rather a female friend of the plaintiff who seeks an order “vacating the order that vacated the Judgment of Divorce of Shelton Mallory, plaintiff, and Elizabeth Mallory, defendant”.
The plaintiff and the defendant were married on August 16, 1959. On February 29, 1980 a default judgment of divorce was granted against the defendant and in favor of the plaintiff. Thereafter, by order dated April 7, 1981, the default judgment was vacated upon the consent of the attorneys for both parties. It is this order, vacating the default, which Ethel Aikens, the movant, seeks to vacate. In support of this motion, Ms. Aikens attaches a copy of a general statutory short form power of attorney executed by the plaintiff on March 8, 1980 naming her as plaintiff’s attorney in fact.
In seeking to have the court sign this order to show cause, the movant alleges that Mr. Mallory was living with her for 16 years until July 22, 1981 and that she was *913 “appointed by Shelton Mallory to handle his legal affairs as well as his business affairs by a power of attorney which was signed prior to that date” (the date of the order vacating the power of attorney) “and it has not been revoked”. In her affidavit, Ms. Aikens alleges that Shelton Mallory’s attorney had received no authority from either Mr. Mallory himself or from her, as attorney in fact, to vacate the default. She alleges that: “Shelton Mallory at this time is possibly incapable of testifying as his mental capacities have deteriorated since he was last in court” and further that: “Shelton Mallory cannot make any statements at this time since he is being held captive by Elizabeth Mallory after she secreted him from my home on July 22, 1981.”
CPLR 2214 (subd [d]) provides in part as follows: “Order to show cause. The court in a proper case may grant an order to show cause, to be served in lieu of a notice of motion, at a time and in a manner specified therein.”
Traditionally, an order to show cause has been considered an alternate means of bringing on a motion. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2214-.24, p 88.) The Justice presiding at Special Term has the obligation to determine if he wishes to sign the order to show cause, except in those cases in which an order to show cause is the required method of instituting process. An order to show cause differs in some ways from a notice of motion. The time within which the order is returnable is fixed in the order and may differ sharply from the time limitations in normal motion practice; while a motion is returnable at a particular part of the court, an order to show cause may be returnable in the usual Motion Part or perhaps even before the Judge who signs the order; the Judge may determine the mode of service in an order to show cause which differs from those methods specifically set forth in the CPLR; and most significantly, an order to show cause may include a temporary restraining order which may continue to the return date of the motion or to the disposition of the motion.
It should be noted that CPLR 2214 (subd [d]) specifically indicates that such an order may be signed “in a proper case”. There is no specific definition of a proper case, and it *914 is obvious that the legislative intent was to leave that question entirely " within the court’s discretion. (Siegel, Practice Commentaries, McKinney’s. Cons Laws of NY, Book 7B, CPLR 02214:25, p 89.) If a Judge finds that there is no reason why an order to show cause is required, he may refuse to sign such an order. Although it is unusual for a Judge to refuse to sign such an order, an order to show cause is truly a product of judicial discretion.
While there is a paucity of cases on the subject of what is a proper case, if this court were to take the position that it must issue an order to show cause in every case, then that portion of the statute which indicates that a court may issue an order to show cause in a proper case would be meaningless. In exercising its discretion, and before signing an order to show cause, the court must look not only at questions of alternate means of service, but must also look at the relief requested and the authority of the person seeking such relief to do so, and then ascertain if under the set of facts most favorable to the movant .the relief could be granted. If in the opinion of the Justice presiding the relief could not be granted under any circumstances, then under CPLR 2214 (subd [d]) the matter would not be a proper case in which to issue the order to show cause, and in such instance the court should exercise its discretion and refuse to sign the order, leaving the moving party to normal motion practice.
In this case, the court has grave doubts as to whether the affidavits furnished provide sufficient reason for an alternate means of service, such as service by registered mail on the defendant, or by personal service on defendant’s attorney, as requested. This court will not, however, rely on the failure to demonstrate the need for alternate service as a reason for refusing to sign this order to show cause.
A careful examination of the affidavits in support of the motion makes it clear that the relief requested could not ultimately be granted to the movant under any circumstances. In making its determination, the court is convinced that Ethel Aikens lacks standing to bring this application. She is not one of the parties to the marital action and in fact, she seeks to dissolve the parties’ married state. The public policy of New York does not permit such *915 interference in the marital state by a third party. The fact that the movant possesses a power of attorney is of no assistance to her. It appears that on this motion Ethel Aikens is relying on that portion of the power which gives the donee the power to act in “all other matters”. This, however, does not give the donee carte blanche authority because of the statutory construction imposed by section 5-1502L of the General Obligations Law, which states in pertinent part: “the language * * * ‘all other matters,’ must be construed to mean that the principal authorizes the agent to act as an alter ego of the principal with respect to any and all possible matters and affairs which are not enumerated in sections 5-1502A to 5-1502K, inclusive * * * and which the principal can do through an agent.” (Emphasis supplied.)
While a principal might very well be bound by the acts of his agent if the agent were to purchase a car on behalf of the principal, or if the agent were to sell certain goods on behalf of the principal, such is not the case where an agent seeks to obtain a divorce for the principal. In such a situation, you are not dealing with commonplace affairs of the marketplace, but rather in an area of extremely personal concern and one over which there will be strict surveillance by our courts. (Christian v Christian, 42 NY2d 63.) To read section 5-1502L of the General Obligations Law so as to authorize this agent to obtain a divorce on behalf of her principal would be ludicrous. The only logical application of this statute to these facts would be to exclude the obtaining of a divorce by an agent on behalf of a principal.
The movant’s concern that the plaintiff has been kidnapped by his wife and that he is now incompetent and incapable of protecting his rights can adequately be protected by any one of a number of remedies, including reporting the alleged kidnapping to the local police, a writ of habeas corpus, or an application for the appointment of a guardian ad litem. It does not require, nor should this court participate in, the obtaining of a divorce by a donee of a power of attorney executed in very general and broad terms.
*916 Accordingly, the application for an order to show cause is denied since there are no circumstances under which the motion by this movant could be granted.