(No. 63005.—

*In re* MARRIAGE OF HERBERT J. DREWS, JR., and SUE ANN CARROTHERS DREWS, Appellee (Lorraine Drews, Guardian, Appellant).

*Opinion filed December 19, 1986.—Rehearing denied January 30, 1987.*

SIMON, J., dissenting.

Sandra G. Nye & Associates, of Chicago, for appellant.

Schiller, DuCanto & Fleck, Ltd., of Chicago (David B. Yavitz and Sarane C. Siewerth, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Petitioner, Lorraine Drews, as plenary guardian of her son, Herbert J. Drews, Jr., filed a petition for dissolution of his marriage in the circuit court of Cook County. Respondent, Sue Ann Carrothers Drews, appeared and filed a motion to dismiss the petition with prejudice for failure to state a cause of action.

The trial court ordered the parties to submit memoranda of law in support of their respective positions. After reviewing the memoranda submitted, the court granted respondent's motion to dismiss the petition with prejudice. A divided appellate court affirmed, concluding that Illinois law does not give a guardian the authority to institute a proceeding for the dissolution of a ward's marriage. (139 Ill. App. 3d 763, 776.) We granted petitioner's appeal pursuant to Supreme Court Rule 315 (103 Ill. 2d R. 315).

We note that we are reviewing the dismissal of a petition. Therefore, the well-pleaded facts contained in the petition for dissolution will be taken as true. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 421.

Petitioner's son and respondent were married in June 1979 and thereafter resided together as husband and wife. In October 1980, petitioner's son sustained a severe and disabling head injury as a consequence of an automobile accident. Respondent continued in her role as

wife until May 1981, at which time she ceased residing in the marital home and abandoned her husband to his parents' care. As a result and because of her son's permanent and total disability, petitioner sought and was granted plenary guardianship over his estate and person. As plenary guardian, petitioner had custody of the ward. She also had authority to manage his estate as well as "to do all acts required by law." Under the authority of her appointment as plenary guardian, petitioner filed for dissolution of his marriage.

Petitioner alleged that respondent was "guilty of desertion and extreme and repeated mental cruelty" and further alleged that respondent was in possession of substantially all of the marital property. Petitioner, on behalf of her ward, sought judgment of dissolution, equitable distribution of the marital property, and an award of maintenance from respondent to the ward.

Respondent moved to dismiss the petition with prejudice, specifically claiming that petitioner was without standing to maintain an action for the dissolution of her ward's marriage. The motion was granted.

A single issue is presented for decision. Does a plenary guardian of a disabled adult have standing to maintain an action for the dissolution of a ward's marriage?

We begin by noting that the issue before us is not novel. It has been addressed over the years by the courts of a number of jurisdictions. Research reveals a strong majority rule that, absent statutory authorization, a guardian cannot maintain an action, on behalf of a ward, for the dissolution of a ward's marriage. *Wood v. Beard* (Fla. Dist. Ct. App. 1958), 107 So. 2d 198, 200; *Phillips v. Phillips* (1947), 203 Ga. 106, 108-09, 112, 45 S.E.2d 621, 622, 624; *State ex rel. Quear v. Madison Circuit Court* (1951), 229 Ind. 503, 504-05, 99 N.E.2d 254, 255; *Mohler v. Shank's Estate* (1895), 93 Iowa 273, 277-79, 61 N.W. 981, 983; *Birdzell v. Birdzell* (1885), 33

Kan. 433, 435-36, 6 P. 561, 561-62; *Johnson v. Johnson* (1943), 294 Ky. 77, 78, 170 S.W.2d 889, 889-90; *Stevens v. Stevens* (1934), 266 Mich. 446, 254 N.W. 162; *Higginbotham v. Higginbotham* (Mo. Ct. App. 1940), 146 S.W.2d 856, 857; *In re Jennings* (1981), 187 N.J. Super. 55, 58-59, 453 A.2d 572, 574; *Mohrmann v. Kob* (1943), 291 N.Y. 181, 189-90, 51 N.E.2d 921, 924-25; *Freeman v. Freeman* (1977), 34 N.C. App. 301, 302-03, 237 S.E.2d 857, 858; *Hart v. Hart* (Tex. Ct. App. 1986), 705 S.W.2d 332; *cf. Campbell v. Campbell* (1941), 242 Ala. 141, 142, 5 So. 2d 401, 401-02 (stating the general rule but finding statutory authorization); *Cohn v. Carlisle* (1941), 310 Mass. 126, 128, 37 N.E.2d 260, 262 (finding statutory authorization); *Kuta v. Kuta* (1951), 154 Neb. 263, 264-66, 47 N.W.2d 558, 559 (finding statutory authorization).

Illinois early adopted the majority position. (*Pyott v. Pyott* (1901), 191 Ill. 280, 288; *Iago v. Iago* (1897), 168 Ill. 339, 341.) However, petitioner contends that *Pyott* and *Iago* do not control the present case because the statement of the majority rule contained in those cases is merely *dicta.* We have reviewed both cases and conclude that this contention is without merit.

In both cases, this court recited, with approval, the majority rule that a guardian is without capacity to seek dissolution of a ward's marriage but observed that the rule was inapplicable on the facts before it. In *Pyott*, the rule was inapplicable because the guardian sought annulment, not dissolution, of the ward's marriage. The court cited the well-settled rule that a guardian can bring an action, on behalf of a ward, to declare a marriage void. (Compare with section 302(a)(1) of the Illinois Marriage and Dissolution of Marriage Act, which gives a guardian standing to seek a declaration of invalidity (formerly, annulment) of a ward's marriage (Ill. Rev. Stat. 1983, ch. 40, par. 302(a)(1)).) In *Iago*, the majority rule was inap-

plicable because the guardian was defending, not maintaining, an action for dissolution brought against the ward. The mere fact that the rule was not applicable on the facts of these cases does not invalidate its application in the proper case.

We conclude that Illinois follows the majority rule. Thus, absent statutory authorization, a guardian cannot institute an action, on behalf of a ward, for the dissolution of the ward's marriage.

Petitioner argues that her status as plenary guardian confers upon her the standing to bring the instant proceeding. She contends that section 11a—18(c) of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(c)) accords her the requisite standing to seek the dissolution of her ward's marriage.

Section 11a—18(c) provides in pertinent part that "[t]he guardian of the estate of a ward shall appear for and represent the ward in *all* legal proceedings unless another person is appointed for that purpose as guardian or next friend." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(c).) Petitioner contends that this language encompasses the standing necessary to maintain the present action. We do not agree.

An examination of section 11a—18, which contains the provision according legal standing to a guardian, establishes that the standing granted is limited to the discharge of a guardian's duties with respect to a ward's estate. Thus, section 11a—18(a) provides in relevant part:

"[T]he guardian of the estate shall have the care, management and investment of the estate, shall manage the estate frugally and shall apply the income and principal of the estate so far as necessary for the comfort and suitable support and education of the ward, his minor and adult dependent children, and persons related by blood or marriage who are dependent upon or entitled to support

from him, or for any other purpose which the court deems to be for the best interests of the ward, and the court may approve the making on behalf of the ward of such agreements as the court determines to be for the ward's best interests." (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(a).)

In order to discharge these responsibilities, the requisite legal standing is granted to the guardian in subparagraph (c). It is clear, therefore, that the standing accorded a guardian to "represent the ward in all legal proceedings" does not encompass the initiation of an action for dissolution of a ward's marriage, which is a personal, not a financial, proceeding. *Pyott v. Pyott* (1901), 191 Ill. 280, 288.

The responsibility of a guardian over the personal affairs of a ward is governed by section 11a—17 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—17). Section 11a—17(a) grants custody of the ward to the guardian and directs the guardian, on behalf of the ward, to make provision for "support, care, comfort, health, education and maintenance and such professional services as are appropriate." (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—17(a).) Further, the guardian is required, insofar as is possible, to "assist the ward in the development of maximum self-reliance and independence." (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—17(a).) We observe that nothing in section 11a—17, which governs the relationship of a guardian to the person of a ward, grants the guardian standing to maintain or defend *any* legal proceeding.

The two provisions of the Probate Act of 1975 that govern the duties of either a limited or plenary guardian, when read together, grant only limited standing related solely to matters directly bearing on the management of the ward's estate. We have scrutinized the remaining provisions of the Probate Act of 1975 regulating guardi-

anship for disabled adults and conclude that none of them accord a guardian, limited or plenary, the standing to maintain an action for the dissolution of a ward's marriage. Thus, applying the general rule to the case at bar, we hold that petitioner lacks the standing necessary to maintain an action for the dissolution of her ward's marriage.

For the reasons stated herein, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

The majority holds that a plenary guardian lacks standing to initiate a dissolution-of-marriage proceeding because the action is too personal to fall within the statute governing guardians for disabled adults. (Ill. Rev. Stat. 1985, ch. 110½, pars. 11a—1 through 11a—23.) It reads the statute as authorizing a guardian to bring suits only in regard to financial matters. In reaching its conclusion, the majority stresses that most foreign jurisdictions preclude guardians from maintaining dissolution-of-marriage actions absent statutory authorization. Because the court views the Illinois statute as silent in this regard, and because on the two occasions in which the court reached this issue it adopted the position of most foreign jurisdictions (*Pyott v. Pyott* (1901), 191 Ill. 280; *Iago v. Iago* (1897), 168 Ill. 339), my colleagues have determined that guardians may not institute dissolution actions on behalf of their wards.

The majority's interpretation of the statute is too restrictive. According to the statute, the guardianship is to be utilized to "protect [the ward] from neglect, exploitation, or abuse" (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—3). In addition, both the statute and our case law have always held that "the primary consideration is the best interest of the incompetent." (*Kinnett v. Hood*

(1962), 25 Ill. 2d 600, 602; Ill. Rev. Stat. 1985, ch. 110½, par. 11a—18.) If the initiation of a legal proceeding though personal can be shown to be beneficial to the maintenance and welfare of the ward, the court ought to allow it. By dismissing this action before determining whether the claim alleged was in the best interest of the ward, the circuit court has avoided its obligation to keep the interest of the ward paramount.

Other jurisdictions have recognized that guardians have the authority to make personal decisions on the ward's behalf. (See *Strunk v. Strunk* (Ky. 1969), 445 S.W.2d 145 (authority to seek a renal transplant); *In re Guardianship of Roe* (1981), 383 Mass. 415, 421 N.E.2d 40 (authority to sterilize a mentally incompetent woman); *In re Conroy* (1985), 98 N.J. 321, 486 A.2d 1209 (authority to withdraw life supports).) Recently, in *In re Estate of D.W.* (1985), 134 Ill. App. 3d 788, 791, our appellate court held that a guardian is vested with broad authority to act in the best interest of a ward and could consent to an abortion for her mentally retarded ward even when the abortion was not necessary to protect the ward's life or health. By allowing guardians to make such decisions regarding dissolution actions, a court preserves "the dignity and worth of such a person [an incompetent] and affords to that person the same panoply of rights and choices it recognizes in competent persons." *Superintendent of Belchertown State School v. Saikewicz* (1977), 373 Mass. 728, 746, 370 N.E.2d 417, 428.

The two Illinois cases on which the majority relies in holding that a guardian lacks standing to initiate a dissolution action (*Pyott v. Pyott* (1901), 191 Ill. 280; *Iago v. Iago* (1897), 168 Ill. 339) were written during a time when divorces were relatively infrequent and much more difficult to obtain (see Ill. Rev. Stat. 1985, ch. 40, par. 401(2) (irretrievable breakdown of marriage now grounds for divorce)). Denying a guardian standing based on

these antiquated case precedents is, in my judgment, an overly narrow reading of the statute that is neither in the best interest of the ward nor the public. I would therefore hold that the court should entertain the guardian's petition and perform its statutory obligation to determine whether a dissolution of marriage is in the best interest of the ward.