594 A.2d 307

**Frank T. SYNO, Appellee,**

v.

**Marie D. SYNO, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1990.

Filed June 27, 1991.

Petition for Allowance of Appeal Denied Dec. 9, 1991.

Kimberly D. Borland, Wilkes–Barre, for appellant.

Sandor Yelen, Wilkes–Barre, for appellee.

Before DEL SOLE, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

In this case of first impression for our Commonwealth, we hold, *inter alia,* that an adjudicated incompetent may prosecute a civil action in divorce through a guardian or guardian *ad litem.*

Having reviewed the records and the parties' briefs, we agree with appellant that appellee, Frank T. Syno, an adjudicated incompetent, may prosecute his civil action for divorce *only* by means of a guardian or guardian *ad litem,* and, thus, his divorce decree which was obtained without the assistance of an appointed guardian is void. Nevertheless, we are convinced that, under certain conditions, an incompetent should be permitted to file a divorce action in this Commonwealth through a guardian or guardian *ad litem.* Accordingly, we vacate the divorce decree and remand for appointment of a guardian *ad litem* and for determination of whether Mr. Syno is capable of making sound personal decisions, whether he possesses a reasonable understanding of the nature of the action for divorce and whether he desires this divorce action to be brought. Pa.R.C.P. 2056(d) (court may vacate judgment and enter an order in the nature of a *procendendo* ).

The record reveals the following facts: On November 24, 1984, Mr. Syno filed a complaint seeking a divorce under Section 201(d) of the Divorce Code alleging that the parties had lived separate and apart for more than three years. Mrs. Syno filed an answer and new matter denying that the marriage was irretrievably broken. Mrs. Syno asserted that her husband had been adjudicated an incompetent five months prior to instituting the divorce action with the result that he was incapable of bringing such an action. Mr. Syno, in reply, asserted that he was competent and capable of bringing the divorce action. A master's hearing followed in which Mr. Syno was allowed to testify despite Mrs. Syno's continuing objection to his competency. Following the denial of her petitions to stay the proceedings pending the appointment of a guardian *ad litem* as well as to

compel Mr. Syno to undergo a psychiatric evaluation, Mrs. Syno ultimately filed a § 201(d) counter-affidavit admitting that the parties had lived separate and apart from November 25, 1984.[1] Following a second master's hearing on October 27, 1987. Mr. Syno filed a petition for bifurcation. The trial court declined to order bifurcation until the filing of the master's report and recommendation. On March 17, 1988, the master recommended granting the decree. Mrs. Syno's ensuing appeal to this Court from the denial of her exceptions was quashed as interlocutory at *Syno v. Syno*, 389 Pa.Super. 505, 567 A.2d 717 (1989). On February 28, 1990, the trial court issued a decree in divorce, retaining jurisdiction of the ancillary claims. The present appeal followed.

Herein, appellant, Marie Syno, raises the following questions on appeal: 1) Whether appellee, Frank Syno, is an incompetent as defined by the Pennsylvania Rules of Civil Procedure such that he may not prosecute any civil action in this Commonwealth except through a guardian or guardian *ad litem;* 2) Whether an incompetent may prosecute a divorce action in this Commonwealth through a guardian or guardian *ad litem;* 3) Whether the lower court erred in ordering bifurcation of the divorce and equitable distribution proceedings; 4) Whether the testimony of an adjudicated incompetent is admissible, competent evidence; and 5) Whether the lower court erred in denying appellant's motion for a mental examination of appellee.

Before addressing the issues raised by appellant, we must review the facts surrounding Mr. Syno's prior incompetency adjudication. On June 29, 1984, First Eastern Bank of Pittston was appointed the guardian of Mr. Syno's estate, upon stipulation of counsel; the trial court specifically noted in its order that "[t]he Court has not ruled on the issue, and there has been no request for a ruling, on

---

1. Mrs. Syno later testified that the actual date of separation was November 23, 1983. N.T. 12/2/86 at 87.

whether or not Frank Syno should have a guardian appointed for his person."[2] Order, dated 6/29/84. Mr. Syno's psychiatric evaluation concluded that he suffers from an Amnestac Syndrome (DSM–III 294.00),[3] a syndrome making him likely to become the victim of designing persons.

The record indicates Mr. Syno's prior incompetency determination was limited, establishing Mr. Syno's incompetency only with respect to management of his estate. There was not a determination of whether Mr. Syno should have a guardian appointed for his person. However, in permitting Mr. Syno to proceed without a guardian *ad litem*, the lower court created a kind of dichotomy among adjudicated incompetents which does not exist by law. Nowhere in the case law of the Commonwealth nor in our statutes is there authority for two distinct types of incompetents: those who are unable to manage their finances and those unable to manage their personal lives. See Pa.R.C.P. 2051; 20 Pa.C.S.A. §§ 102 and 5501. Rather, an incompetent is a person who meets either criterion. Once one has been determined to be incompetent, one is incompetent for all purposes until, by court order, the status of incompetency is lifted. 20 Pa.C.S.A. § 5517; Pa.R.C.P. 2051 (an incompetent is a person "who has been adjudicated incompe-

2. It should be noted that Marie Syno was the petitioner in the Orphans' Court action to appoint the guardian of Mr. Syno's estate.

3. Diagnostic and Statistical Manual of Mental Disorders (3d ed.- revised, 1987) at 109, sets forth the diagnostic criteria for Amnestic Syndrome:

A. Demonstrable evidence of impairment in both short- and long-term memory; with regard to long-term memory, very remote events are remembered better than more recent events. Impairment in short-term memory (inability to learn new information) may be indicated by inability to remember past personal information (e.g., past Presidents, well-known dates).

B. Not occurring exclusively during the course of Delirium, and does not meet the criteria for Dementia (i.e., no impairment in abstract thinking or judgment, no other disturbances of higher cortical function, and no personality change).

C. There is evidence from the history, physical examination, or laboratory tests of a specific organic factor (or factors) judged to be etiologically related to the disturbance.

tent").[4]

■ Presently, it is undisputed that at the time this action was instituted, Mr. Syno had been declared incompetent. Pa.R.C.P. 2051 is quite specific, defining an incompetent as a person "(a) who has been adjudicated incompetent ..." Thus, Mr. Syno, absent an intervening determination of competency, is an incompetent for the purposes of this action. Pa.R.C.P. 2051, 2056(e) ("A finding of incompetency shall be based either on evidence presented to the court in which the action is pending, or on an adjudication of incompetency entered by a court of competent jurisdiction.").

■ Accordingly, Mr. Syno cannot maintain a divorce action, or any civil suit for that matter, in his own name, but rather must be represented by a guardian or guardian *ad litem*. Pa.R.C.P. 2053, 2056(a). Once the lower court was alerted to the fact that Mr. Syno was an incompetent, the court, before proceeding, should have either required his current guardian, First Eastern Bank of Pittston, to assume its duties or appointed a guardian *ad litem* for the divorce action. Pa.R.C.P. 2056.[5] Since Mr. Syno was not represented by a guardian in the divorce proceedings, the divorce decree is void.

■ Although Mrs. Syno is correct that it was error to permit Mr. Syno to pursue this divorce action in his own name, we reject her assertion that an incompetent should not be permitted to institute a divorce action in Pennsylvania. In fact, the rules of civil procedure governing actions for divorce or annulment anticipate that an incompetent can be a plaintiff in an divorce action. Pa.R.C.P. 1920.12 states: "... the plaintiff shall set forth in the complaint as to the

4. Further, it is the burden of the incompetent to establish that he has become competent. *In re Porter Estate,* 463 Pa. 411, 345 A.2d 171 (1975).

5. In addition, the court was required to conduct an inquiry into Mr. Syno's competency to testify once it was presented with credible evidence that he was an adjudicated incompetent. *Cf., Commonwealth v. Anderson,* 381 Pa.Super. 1, 552 A.2d 1064 (1988), allocatur denied, 524 Pa. 616, 571 A.2d 379 (1989).

cause of action of divorce or for annulment (1) the names of the plaintiff and defendant and, if *either party is* a minor or *incompetent,* a statement to that effect and the name and address of such party's guardian, if any ..." (emphasis added).

As previously stated, the question of whether a guardian *ad litem* may file a divorce action in this Commonwealth on behalf of his incompetent ward is a question of first impression for Pennsylvania appellate courts. However, commencement of an action for divorce by an incompetent through a guardian was approved by the Court of Common Pleas of Adams County in the case of *Carver Estate,* 5 D. & C.3d 743 (1977).

Research reveals that many states adhere to the view that, absent statutory authority, a guardian cannot maintain an action for dissolution of an incompetent's marriage. 6 ALR3d 681, Power of Incompetent Spouse's Guardian, Committee, or Next Friend to Sue for Granting or Vacating of Divorce or Annulment of Marriage, or to Make a Compromise or Settlement in such Suit, § 3[a]. *See also, In re Marriage of Drews,* 115 Ill.2d 201, 104 Ill.Dec. 782, 503 N.E.2d 339 (1986), cert. denied 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987); *Phillips v. Phillips,* 203 Ga. 106, 45 S.E.2d 621 (1947); *In re Jennings* 187 N.J.Super. 55, 453 A.2d 572 (1981); *Hart v. Hart,* 705 S.W.2d 332 (Tex.Ct.App. 1986); *Mallory v. Mallory,* 113 Misc.2d 912, 450 N.Y.S.2d 272 (1982); *Cohen v. Cohen,* 346 So.2d 1047 (Fla.Dist.Ct. App.1977).

However, other jurisdictions permit a guardian to institute a divorce proceeding on behalf of his incompetent ward. 6 ALR3d 681, § 3[b]. *See also, In re Marriage of Higgason,* 10 Cal.3d 476, 110 Cal.Rptr. 897, 516 P.2d 289 (1973); *Pace v. Pace,* 32 Ohio App.3d 47, 513 N.E.2d 1357 (1986); *In re Marriage of Gannon,* 104 Wash.2d 121, 702 P.2d 465 (1985); *Smith v. Smith,* 125 Mich.App. 164, 335 N.W.2d 657 (1983); *Cohn v. Carlisle,* 310 Mass. 126, 37 N.E.2d 260 (1941); *Campbell v. Campbell,* 242 Ala. 141, 5 So.2d 401 (1941).

Mindful that an incompetent may maintain a civil action in Pennsylvania only through a guardian, we find the latter view compelling, especially in light of this Commonwealth's definition of an "incompetent" as a person who, because of infirmities, is unable to manage property *or* lacks the capacity to make responsible decisions concerning his person. 20 Pa.C.S.A. § 5501; Pa.R.C.P. 2051. It is certainly possible that an "incompetent" may be unable to manage his estate and, yet, be capable of making reasonable choices concerning his personal life. Thus, we should not deny *per se* an adjudicated "incompetent" the right to proceed with a divorce action.

Rather, an incompetent spouse should be permitted to institute a divorce proceeding through a guardian or guardian *ad litem, provided* the incompetent is capable of exercising reasonable judgment as to personal decisions, understands the nature of the action and is able to express unequivocally a desire to dissolve the marriage. Cf. *Marriage of Higgason*, 110 Cal.Rptr. at 902–903, 516 P.2d at 294–295 (proceeding may be brought on behalf of a spouse under conservatorship through his or her guardian *ad litem*, provided it is established that the spouse is capable of exercising a judgment, and expressing the wish that the marriage be dissolved on account of irreconcilable differences and has done so); *In re Marriage of Kutchins*, 136 Ill.App.3d 45, 90 Ill.Dec. 722, 482 N.E.2d 1005 (1985), later appeal 157 Ill.App.3d 384, 110 Ill.Dec. 269, 510 N.E.2d 1300 (1987), appeal denied 117 Ill.2d 544, 115 Ill.Dec. 401, 517 N.E.2d 1087 (1987). Further, the incompetent must be found "competent" to testify and able to verify statements made in his or her complaint. *Commonwealth v. Trudell*, 371 Pa.Super. 353, 538 A.2d 53 (1988); *In re Rhoads*, 70 D. & C.2d 509 (1974).

Upon review of the record, we remand for a clearer determination of whether Mr. Syno is capable of exercising reasonable judgment and expressing his desire to obtain the divorce. We do not believe that the record adequately demonstrates that Mr. Syno meets those requirements as

Mr. Syno's testimony [6] is insufficient to demonstrate un-equivocally his ability to make reasonable decisions and his desire to obtain the divorce, especially when viewed in the light of Dr. Gene F. Harding's letter to the court.[7]

6. Our careful scrutiny of this record reveals that Mr. Syno testified as follows:

Q: Now, Mr. Syno, is there any question in your mind that at least for the last 15 years, you have lived separate and apart from your wife, Mrs. Syno?
A: I have lived separate and apart.
Q: Do you understand why we are here today
A: So I can get a divorce.
Q: Do you want a divorce.
A: That's why I'm here.
Q: Is there any chance that you and your wife could ever possibly get together again as husband and wife?
A: No chance whatsoever.
Q: Are you sure about that?
A: Positive.
Q: Do you understand the proceedings here; that this is to get a divorce.
A: Right.
Q: And you're telling us that you don't want to live with your wife?
A: Right.
Q: And that you can't possibly live together as man and wife?
A: Right.
Q: Do you understand all of this?
A: I understand very well.
Q: Is there any question in your mind about that?
A: No question whatsoever.
Q: Do you feel that your marriage is irretrievably broken?
A: It's broken.
Q: Irretrievably; that means that you could never again—
A: It could never be picked up.
N.T., 12/2/86 at 20–21.

7. Dr. Harding's letter reads as follows:
Dear Judge Muroski:
Mr. Frank Syno was seen on November 27, 1985 for the purpose of a competency evaluation per the request of the Court. The format for the evaluation consisted of my examining Mr. Syno for a period of approximately forty-five minutes and then Mary Magistro (with whom he resides) joined us for a short while to include any information she might want to convey to me. Mr. Syno was aware that I am a psychiatrist and that the purpose of the evaluation was the question of competency. He gave his full permission to the evaluation.
When questioned concerning his age and birthdate, Mr. Syno responded "It was Christmas Eve, I think 1923. I am either sixty-two or sixty-three years old". He was able to identify the date as being November 27, 1985. He added, "I know Thanksgiving is coming up".

Mr. Syno informed me that he has been involved in three marital relationships and is separated from his third wife but the divorce has not been finalized. When I evaluated Mr. Syno in April, 1984, he had indicated to me that he had had two marriages. He is not able to tell me the approximate dates of any of his marriages and I am unclear as to exactly how many marriages have occurred. He talks about being involved in the Pacific Theatre during World War II and being hospitalized. I questioned him regarding the reason for hospitalization and he responded "I guess it was shellshock or something like that". He informs me that he receives one hundred percent service connected disability. He talks about being involved in some kind of accident while working for Medico Industries but cannot recall when this occurred nor can he convey specific details regarding his injuries. He is able to identify the fact that his income is over one thousand dollars per month but does not know the exact amount. He believes he receives over three hundred dollars from Social Security per month and "something close to one thousand dollars" from his service connected disability. He can name the bank which is in charge of his finances and the person (Earl Campbell) who is in charge. Further, he is aware that Mary Magistro receives four hundred dollars per month for his room and board. Mr. Syno receives one hundred dollars per week for "spending money". According to Mr. Syno, he and Mary Magistro eat out of the home on a fairly frequent basis and he purchases the meals. Mr. Syno is aware that he has a son but cannot give me his son's age or the son's location. He stated to me that he has a will and his funds will be left to his grandchildren. When asked to identify his grandchildren, Mr. Syno stated "I know there are either two or three". He seems to relate primarily to Mary Magistro and has very few other acquaintances. He spends his time watching movies on television and some painting of paint-by-number pictures. He could not identify any favorite programs on television nor could he identify anything that he had watched in the last two or three days. Mr. Syno has resided with Mary Magistro since Thanksgiving of 1983 and comments that he is satisfied with his environment and feels that Mary Magistro takes good care of him. Mr. Syno is aware that he resided at Wesley Village prior to living with Mary Magistro but has no idea for what period of time.

Mental status examination revealed Mr. Syno to be oriented to person and time but not to place. He was able to designate Washington, D.C., as the capitol of the United States and Harrisburg as the capitol of Pennsylvania. He can name the present president and when asked to name other presidents he could designate only Mr. Roosevelt. He was incapable of remembering three objects after three minutes. He could repeat two digits forward but only one digit backward. Matters involving judgment were handled in an inconsistent fashion with occasions demonstrating rather impaired judgment. He could remember what he had for lunch on the day of his evaluation but could remember none of his meals the previous day. There is no evidence of any psychotic ideation or symptomatology. There is no evidence of any significant depressive symptomatology. Obviously, as documented, recent and remote memory are rather markedly impaired.

■ We turn now to Mrs. Syno's contention that the the trial court erred in granting a decree in divorce without holding a hearing on the propriety of bifurcation and in failing to issue an opinion analyzing the rationale for bifurcation. We reject this contention under the law of the case.

The doctrine of the "law of the case" provides that where an appellate court has considered and decided a question on appeal, that court will not, in a subsequent appeal of another phase of the same case, reconsider its previous ruling. *Roskwitalski v. Reiss*, 338 Pa.Super. 85, 487 A.2d 864 (1985), *appeal denied* 514 Pa. 619, 521 A.2d 933 (1986). In *Syno I*, the earlier case before this Court we stated:

A court *may* enter a decree in divorce and dispose of ancillary matters at a later date. The legislature's clear intent is to permit the entry of a divorce decree while collateral matters remain pending, thus allowing "the parties to quickly begin the task of restructuring their lives[,] . . . so that the marriage and each party's personal life are not held hostage to economic demands. The unexplained delay in this case only serves to thwart the purpose of the Divorce Code (citations omitted).

*Syno I*, 389 Pa.Super. at 508–09, 567 A.2d at 719. Under the doctrine of the law of the case, a trial court must strictly comply with the mandate of the appellate court. The trial court in the present case properly ordered bifurca-

Diagnostic impression remains unchanged from my evaluation in April, 1984. The diagnosis, in my professional opinion, continues to be Amnestic Syndrome (DSM–III 294.00). There exists no question that Mr. Syno presents as an individual who could well be the victim of designing persons. He is a passive and pleasant individual and would do almost anything for anyone who is kind to him. Guardianship of estate has been established and should continue. Mr. Syno appears to be very satisfied with his living arrangement as it exists and, further, Mary Magistro appears to be quite reliable in providing supervision for him so that I find no basis for pursuing guardianship of person at this time.

Should further information be necessary, feel free to contact me at any time.

Respectfully submitted,
/s/
Gene F. Haring, M.D.

tion as mandated by this Court in our opinion quashing the appeal at *Syno I.*

We need not presently address the fourth and fifth issues raised by Mrs. Syno in light of our decision to vacate the divorce decree and remand for proceedings in accordance with this opinion. However, we will comment further to reiterate that an adjudicated incompetent may be "competent" to testify. In those cases where an adjudicated incompetent is a witness, the court must conduct an inquiry to determine whether the incompetent understands his or her duty to tell the truth and whether he or she is able to perceive, remember and communicate the pertinent facts. *Commonwealth v. Goldblum,* 498 Pa. 455, 447 A.2d 234 (1982); *Anderson, supra; Trudell, supra.* If the court so finds, then the incompetent is "competent" to testify. To that end, the court, in the exercise of its discretion, may order the incompetent to submit to a psychiatric evaluation. *Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978); *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985).

In conclusion, we vacate the divorce decree and remand this action with instructions to the lower court to appoint a guardian *ad litem* for Mr. Syno and to conduct a more thorough hearing on Mr. Syno's capacity to make reasonable decisions concerning his person, his understanding of the nature of a divorce action and his desire to maintain this action.

Decree vacated and case remanded for further proceedings in accordance with this opinion. Jurisdiction is relinquished.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I must dissent from that portion of the majority opinion which vacates the divorce decree and remands for the appointment of a guardian *ad litem* and for determination of whether Mr. Syno is capable of making sound personal

decisions. Under the facts and circumstances of the present case, not the least of which is that the marriage was irretrievably broken at the time the divorce decree was initially granted, and the parties had lived separate and apart for at least five years, I must reject the majority's finding that as an adjudicated incompetent, Mr. Syno may not proceed with a divorce decree without the appointment of a guardian *ad litem*. I do so for several reasons.

First, the incompetency determination relied upon by Mrs. Syno is clearly limited, establishing Mr. Syno's competency only with respect to the management of his estate. Mrs. Syno's attempt to rely on a court order declaring Mr. Syno to be incompetent to manage his personal affairs fails where the court order upon which she relies unambiguously states that this particular issue has neither been raised nor addressed. Order of Court, dated 6/29/84.

The Annotation, *Divorce—Insanity as Precluding*, 19 A.L.R.2d 144 (1951) § 20, at 182, states:

> Since the right to sue for a divorce is regarded as as strictly personal to the aggrieved spouse, and no marital offenses automatically effect a dissolution of the marriage, the general rule is that, in the absence of a statute so authorizing, an insane person cannot institute an action for divorce.

The same Annotation also notes, however, that:

> In the absence of a legal adjudication of insanity it will be presumed generally that a person has the capacity to bring a divorce action, even though not of strong mind, it being essential only that the plaintiff have sufficient mentality to understand the nature of the action taken.

*Id.* § 21, at 184. This position is echoed by other authorities:

> [I]f the plaintiff has not been adjudicated, although admittedly insane, he himself may bring the action, and he may also bring the action if he is capable of consenting to the dissolution of the marriage whether or not he has been [so] adjudicated (citations omitted).

Homer H. Clark, Jr., Law of Domestic Relations in the United States (2d) § 14.2 at 535. Other authorities advance the same position:

> In the absence of the adjudication of insanity or mental illness, there is a presumption that the capacity to maintain the action exits. If the party has a reasonable understanding of the nature and the purpose of the action for divorce, and has the will to decide whether or not an action should be brought, that person has the mental capacity to bring an action in his or her name (citations omitted).

I Family Law and Practice, Arnold H. Rutkin (ed.), § 2.06[1] at 2–33—2.34. These authorities support allowing the trial court to make a determination regarding capacity on a case by case basis, echoing the provision of Pa.R.C.P. 2051(b)(2) which allows a trial court to make this determination "in the pending litigation," also in a case by case fashion.[1]

Careful scrutiny of this record reveals that Mr. Syno testified as follows:

Q: Now, Mr. Syno, is there any question in your mind that at least for the last 15 years, you have lived separate and apart from your wife, Mrs. Syno?

A: I have lived separate and apart.

Q: Do you understand why we are here today

A: So I can get a divorce.

Q: Do you want a divorce.

A: That's why I'm here.

---

1. The trial court, relying on *Carver Estate,* 5 D. & C.3d 743 (1977), determines that incompetents may not be denied the right to seek divorce simply and only because of the adjudication of incompetency. *Carver* relies on *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), to conclude "that presumptions which deny basis civil rights violate the equal protection and due process clauses of the Fourteenth amendment." *Carver,* at 755. In view of our disposition pursuant to Pa.R.C.P. 2051(b)(2), we find it unnecessary to address this argument.

Q: Is there any chance that you and your wife could ever possibly get together again as husband and wife?

A: No chance whatsoever.

Q: Are you sure about that?

A: Positive.

Q: Do you understand the proceedings here; that this is to get a divorce.

A: Right.

Q: And you're telling us that you don't want to live with your wife?

A: Right.

Q: And that you can't possibly live together as man and wife?

A: Right.

Q: Do you understand all of this?

A: I understand very well.

Q: Is there any question in your mind about that?

A: No question whatsoever.

Q: Do you feel that your marriage is irretrievably broken?

A: It's broken.

Q: Irretrievably; that means that you could never again—

A: It could never be picked up.

N.T., 12/2/86 at 20–21.

Based on this testimony, I would conclude, as did the Master and the trial court, that Mr. Syno had a reasonable understanding of the nature and the purpose of the action for divorce, and also had the will to decide whether or not a divorce action should be brought. Consequently, there is support for the conclusion that Mr. Syno had the mental capacity to bring a divorce action in his own name.

Next, citing to *Fink's Estate*, 343 Pa. 65, 21 A.2d 883 (1941), Mrs. Syno argues that because Frank Syno had a

guardian appointed for his estate he was not competent to testify and that his testimony is inadmissible. In *Commonwealth v. Trudell*, 371 Pa.Super. 353, 538 A.2d 53 (1988), we stated:

> The competency of a witness to testify is is a matter within the sound discretion of the trial judge, whose decision will not be reversed absent a clear abuse of discretion. The breadth of that discretion is wide since the trial judge has the opportunity to personally observe and evaluate the demeanor and sincerity of the witness. Indeed, we have recognized that the better practice where questions of witness competency arise is to permit the witness to testify and to leave the matter of credibility to the fact finder.

371 Pa.Super. at 359, 538 A.2d at 56.

In general, it is presumed that a witness is competent. 42 Pa.C.S. 5911. Even though a witness may be mentally disabled or insane, the burden of proving incompetency falls to the party asserting that the witness is incompetent. Packel and Poulin, Pennsylvania Evidence (1987) § 601.7. The trial court may in the exercise of its discretion order a psychiatric examination if it has reason to believe that a witness is incompetent. *Id.* While there appears to be some support for the conclusion "that the usual presumption of competency is reversed where the witness has been committed to a mental hospital," *Id.* at n. 6, in essence the question of a witness' competency is a finding of fact. Hence while the cases often state that a finding of witness competence determined in the discretion of the trial court will not be disturbed absent an abuse of discretion, more rigorous analysis is advanced by observing that findings of fact will not be reversed if supported by evidence of record.

The trial court found Mr. Syno competent to testify, determining that Mr. Syno's testimony appeared to be lucid and in direct response to questions asked of him. Trial court opinion, 5/18/90, at 10. Significantly, the trial court noted that even though the question of Mr. Syno's competency had been raised by opposing counsel, the Master

continued with the testimony and failed to indicate "that the hearings should be terminated or suspended" because Mr. Syno had difficulty understanding the nature of the proceedings. *Id.* As the trial court properly states, in applying an abuse of discretion standard, we will not attempt to usurp the Master's duty as a finder of fact; substantial weight will be given to the findings of the Master where the Master had the opportunity to observe the witnesses and their demeanor. *Id.* at 7. Hence, I would find no error, and no abuse of discretion, and would affirm the order of the trial court.