Antoinette HARTDEGEN, Appellant,

v.

Bruce BERGER, M.D., Appellee.

Superior Court of Pennsylvania.

Argued Sept. 9, 2003.

Filed Dec. 15, 2003.

Robert A. Huber, Philadelphia, for appellant.

William C. McGovern, Philadelphia, for appellee.

Before: GRACI, OLSZEWSKI, and CAVANAUGH, JJ.

GRACI, J.

¶ 1 Antoinette Hartdegen, Appellant, ("Hartdegen") appeals from the Court of Common Pleas of Philadelphia County's January 9, 2003, entry of Judgment in favor of Appellee, Bruce Berger, M.D. ("Berger"). The entry of judgment followed the trial court's December 5, 2002, denial of Hartdegen's post trial motion requesting a new trial. After careful review, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 On December 29, 1999, Hartdegen filed a medical malpractice action against Appellee, Bruce Berger, M.D. ("Berger")[1] claiming that Berger failed to obtain her informed consent before performing a tubal ligation/sterilization procedure. Hartdegen further averred that as a result of this procedure, she suffered complications, including a lacerated colon and permanent disfigurement.

¶ 3 The factual and procedural history was aptly provided by the trial court in its March 17, 2003, opinion as follows:

> According to Plaintiff's own testimony, at the time in question, Plaintiff was a 36–year old female with a history of suffering schizophrenia, bipolar disorder, depression, and mild retardation. As a child and adolescent, Plaintiff attended an alternative school for the mentally disabled. Although she has

1. Eric Smith, M.D. was also named in the complaint, however the parties stipulated to dismiss Dr. Smith as a defendant on December 10, 2001.

had sporadic employment, Plaintiff receives social security benefits. Despite her diagnoses and limitations, Plaintiff is self-sufficient in that she has lived independently, maintains her own bank account, purchases groceries and clothing, takes public transportation on her own, prepares meals for herself, and sees numerous health providers.

In the fall of 1997, Plaintiff was allegedly raped and became pregnant. Plaintiff stated that she was advised by her friends and neighbors to terminate the pregnancy. Although she felt pressured by this advice, Plaintiff sought assistance from her health insurance carrier, Keystone Mercy Insurance, which referred her to Defendant Berger. On November 24, 1997, Plaintiff, then fourteen (14) weeks pregnant and accompanied by a neighbor, went to Defendant Berger's office for a consultation and examination in anticipation of a therapeutic abortion. Defendant Berger explained the procedure to Plaintiff, including the risks and complications associated with an abortion. Twenty-four hours later, on November 25, 1997, Plaintiff returned and Dr. Berger performed the abortion as an outpatient. Following the procedure and before leaving the office, Plaintiff and Defendant Berger discussed the different birth control methods, including tubal ligation. Plaintiff expressed an interest to undergo a tubal ligation. Defendant Berger advised her that there was a thirty-day waiting period and that the earliest she could have the procedure would be after December 25, 1997. Defendant Berger testified that he then informed Plaintiff of the complications and risks of the tubal ligation procedure, provided a consent form to take with her, and advised her to call his office for an appointment should she decide to undergo the procedure.

Apparently, Plaintiff called for an appointment, and on December 29, 1997, Plaintiff was examined by Defendant Berger, at which time he again explained the tubal ligation procedure, including the risks, complications and alternatives, had her sign the consent form, and referred her to Albert Einstein Medical Center (AEMC) for pre-op procedures. On December 30, 1997, prior to the procedure, Defendant Berger consulted with Plaintiff and was assured that Plaintiff wanted to undergo the tubal ligation. Thereafter, Defendant Berger performed a laparoscopic tubal ligation.

Unfortunately, complications developed after Plaintiff was released from the hospital. On December 31, 1997, Plaintiff reported to the AEMC emergency room with complaints of pain, vomiting, and diarrhea. Plaintiff was diagnosed with post-operative pain status post tubal ligation, and released. On January 3, 1998, Plaintiff was seen by Defendant Berger at his office with complaints of continuous and increased pain. He immediately referred her to AEMC, where she underwent an emergency bowel repair, which had perforated during the December 30, 1997, tubal ligation procedure.

As the result of the perforation and subsequent bowel repair surgery, Plaintiff has a distended abdomen and numerous deforming scars. In addition, Plaintiff complains of experiencing difficulty in lifting, bending, squatting, twisting, and bouts of nausea, vomiting, diarrhea, and bleeding.

Opinion, 3/17/03, at 2–4 (footnotes omitted).

¶ 4 This evidence was presented during a five day trial to a twelve person jury. On October 17, 2002, the jury rendered a verdict in favor of Berger. Subsequently, Hartdegen filed a timely post-trial motion

requesting a new trial. On December 5, 2002, the trial judge denied Hartdegen's post-trial motion. Hartdegen filed this timely appeal and raises the following issues for our consideration:

1. Whether the trial court erred by permitting Antoinette Hartdegen to testify without first conducting a colloquy to determine whether she understood the witness oath and had the capacity to perceive, remember and communicate pertinent facts. *Syno v. Snyno*[*Syno*], [406 Pa.Super. 218] 594 A.2d 307 (Pa.Super.1991), Pa.R.C.P.2051.

2. Whether the trial court erred by sustaining appellee's objection to the introduction of the guardian ad litem, Lewis Walder, Esquire to the jury and in refusing to permit Mr. Walder to be introduced to the jury when the trial court had previously stated that Mr. Walder would be allowed to be introduced to the jury, thus precluding Appellant's guardian ad litem from effectively performing his duties, and denying due process to Appellant since Mr. Walder was the real party in interest, and severely prejudiced Appellant's case, making it appear she did not need a guardian ad litem. Appellant took exception to the trial court's ruling on this issue.

3. Whether the trial court erred by permitting and/or failing to limit the testimony of Timothy Michal's M.D[.], Appellee's psychiatric expert. Appellant had filed a motion in limine in this regard based upon the appellee's violation of the case management order and pre-trial order. Appellant also submits the trial court erred in overruling Appellant's counsel's objection to Dr. Michal's testimony regarding Appellant's ability to understand the notion of relative risk, as no such

opinion was contained within the reports of said psychiatrist. Appellant took exception to the trial court's ruling on this issue.

4. Whether the trial court erred in sustaining objections to questions posed by Appellant's counsel to appellee Dr. Berger about his use of Albert Einstein Medical Center ("AEMC") consent forms and short stay forms which were used in this case as well, allegedly utilized by the appellee without permission of AEMC or anyone in authority at AEMC. Appellant took exception to the trial court's rulings on these issues.

5. Whether the trial court erred in sustaining objections to questions posed by Appellant's counsel to appellee Dr. Berger about the number of depositions he had given in prior medical malpractice cases. Appellant took exception to the trial court's rulings on these issues.

6. Whether the trial court erred by permitting Appellant's family physician, Evelyn Partridge, D.O.[,] to testify and by overruling Appellant's counsel's objections to the testimony of Dr. Partridge for the reasons set forth within her deposition[ ] including[,] but not limited to[,] the introduction of testimony which required expert opinion, when she was only identified as a fact witness. Appellant filed a motion in limine to preclude her testimony based upon the late disclosure of this individual as a defense witness in violation of the case management order and pre-trial order and took exception to the trial court overruling said rulings.

Appellant's Brief, at 1–2.

## II. DISCUSSION

■ ¶ 5 We begin by discussing Hartdegen's failure to file a 1925(b) statement. The trial court stated in its opinion that

[p]ursuant to Pennsylvania Rule of Appellate Procedure 1925(b), [Hartdegen] was advised to file of record and serve unto this trial judge a statement of matters complained of on appeal. [Hartdegen] has not filed *of record* the statement of matters complained of on appeal. Thus, [Hartdegen] can be considered to have waived her appellate arguments. Notwithstanding and in the interest of judicial economy, this opinion is being issued.

Opinion, 3/17/03, at 1, n. 1. In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that in order to preserve claims for appellate review, an appellant must comply whenever the trial court orders the filing of a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925. "Any issues not raised in a 1925(b) statement will be deemed waived." *Id.* at 309.[2] The Court reiterated its holding in *Lord* when it stated,

> [T]his Court eliminated any aspect of discretion and established a bright-line rule for waiver under Rule 1925: "[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement *will be deemed waived.*" *Lord,* 719 A.2d at 309 (emphasis added). Thus, waiver under Rule 1925 is automatic.

*Commonwealth v. Butler,* 571 Pa. 441, 812 A.2d 631, 633 (2002). The *Butler* court also held that in order to avoid waiver, appellants must "file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on

the appeal...." *Id.* at 634 (citation omitted). The Court made it clear that, "Rule 1925 is not satisfied when an appellant merely mails his Rule 1925(b) statement to the presiding judge." *Id.*

¶ 6 However, our Supreme Court has also made it clear that, "it is axiomatic that in order for an appellant to be subject to waiver for failing to file a timely 1925(b) statement, the trial court must first issue a 1925(b) order directing him to do so." *Commonwealth v. Hess,* 570 Pa. 610, 810 A.2d 1249, 1252 (2002) (citation omitted). In *Hess,* the trial court filed an order with the clerk of courts directing that Appellant file a 1925(b) statement within fourteen days. The docket indicated that both the Appellant's attorney and the District Attorney were served with the order. However, the Appellant provided substantial evidence that he was not provided with the court's order and the docket did not indicate the date or manner of service, contrary to Pa.R.Crim.P. 114. *Id.* at 618, 810 A.2d 1249.

¶ 7 Rule 114 provides:

**Rule 114. Notice and Docketing of Orders**

> Upon receipt of an order from a judge, the clerk of courts shall immediately docket the order and record in the docket the date it was made. The clerk shall forthwith furnish a copy of the order, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.

Pa.R.Crim.P. 114. The *Hess* court concluded that,

> [g]iven this failure to comply with mandatory procedures under Rule 114, we are unable to ascertain the date upon

---

**2.** The teachings of *Lord* have been applied in civil cases no less than to criminal cases. *Lobaugh v. Lobaugh,* 753 A.2d 834, 837–38

(Pa.Super.2000); *Giles v. Douglass,* 747 A.2d 1236, 1236–37 (Pa.Super.2000).

which Appellant was purportedly served with the trial court's 1925(b) order and, therefore, simply cannot conclude when, if ever, the fourteen day period under Rule 1925(b) began to run. As a result, ... there is no basis for us to properly conclude there existed a failure to comply with the order's directive to file a [1925(b)] statement within fourteen days.

*Commonwealth v. Hess,* 810 A.2d at 1254 (citations omitted) (quotations omitted).

¶ 8 In the case *sub judice,* although the trial court states in its 1925(a) opinion that Hartdegen was "advised to file of record and serve the trial court with a 1925(b) statement," Opinion, at 1, n. 1, the trial court docket, despite the requirements of Pa.R.C.P. 236 [3] does not contain an entry of the 1925(b) order, nor does it indicate that notice was given to the attorneys of record. As a result, like the court in *Hess,* "there is no basis for us to properly conclude there existed a failure to comply with the order's directive to file a [1925(b)] statement[.]" *Commonwealth v. Hess,* 810 A.2d at 1254. Given these circumstances, where Hartdegen was not served with notice of the trial court's order directing her to file a 1925(b) statement, Hartdegen cannot be penalized for failing to file a 1925(b) statement, and we will not deem Hartdegen's issues waived for purposes of appellate review.

■■■ ¶ 9 Appellate review of a motion for a new trial involves a two-step analysis of the trial court's determination to grant or deny a new trial.

First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was or was not made. In doing so, ... the appellate court must apply the appropriate standard of review. If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. If the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion.... [A] trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis. If the appellate court discerns that a mistake was made at trial, however, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial.

*Hall v. Jackson,* 788 A.2d 390, 398 (Pa.Super.2001) (reargument denied, 2002) (citations omitted).

¶ 10 In the present case, the trial court considered Hartdegen's allegations of error and determined that no error occurred. The trial court found instead that, "the evidence of record clearly supports the jury's findings that [Appellee] Berger did obtain [Hartdegen's] informed consent." Opinion, 3/17/03, at 20. We agree.

---

3. We note that Pa.R.C.P. 236 is comparable to Pa.R.Crim.P. 114. Rule 236 provides in pertinent part:

   (a) The prothonotary shall immediately give written notice of the entry of

       · · ·

   (2) any other order, decree or judgment to each party's attorney of record.... The notice shall include a copy of the order, decree or judgment.

   (b) The prothonotary shall note in the docket the giving of the notice ....

Pa.R.C.P. 236

## III. CONCLUSION

¶ 11 After a thorough review of the record and briefs, and based on the well-reasoned opinion of the learned trial court that we adopt as our own, we affirm the judgment entered upon the jury's verdict.

¶ 12 Judgment affirmed.