■ In the Matter of HENRY STREET LIQUORS, INC., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [642 NYS2d 659] —In this CPLR article 78 proceeding, transferred to this Court by order of Supreme Court, New York County (Edward H. Lehner, J.), entered September 19, 1994, the petition is unanimously granted and respondent's order, insofar as it suspended petitioner's license to sell alcoholic beverages at its premises for a period of 60 days (not counting Sundays), and imposed a $1,000 suspension bond, is vacated and annulled, on the law, without costs.

Petitioner, which operates a licensed retail liquor store in Hempstead, was charged, *inter alia*, with four instances of unlicensed wholesale of alcoholic beverages, in violation of Alcoholic Beverage Control Law § 100 (1). The first instance allegedly took place on December 9, 1992, when two State Liquor Authority (SLA) investigators observed more than 25 cases of alcoholic beverages, including Absolut vodka, being loaded into a van owned by petitioner's delivery man, which then proceeded to make the rounds, unloading at a warehouse, a post office, and finally at Bride's Pub, a bar in Flushing licensed to Donnaca, Inc., where five cases of Absolut were delivered. It was conceded that the investigators never saw the contents of the boxes, never entered the pub and never contacted anyone at the pub to confirm the delivery. In fact, the owner of Bride's Pub, who was separately contesting a charge of illegal wholesale purchase of the five cases of Absolut vodka (which charge was subsequently dismissed), testified on petitioner's behalf that her establishment had never done business with petitioner. Furthermore, the owner said Bride's never accepted deliveries through the front door, but only through a basement trap door directly from the street. Petitioner also called the owner of a paint store next door to Bride's who testified that

*he* had purchased five cases of Absolut vodka, among others, from petitioner for holiday gift distribution to business contacts, friends and family. The delivery of this order on December 9 was confirmed by an invoice itemizing the transaction which, including sales tax, came to $1,301.17. The purchaser's canceled check, indicating payment by the bank five days later, was also offered into evidence. Petitioner's principal testified that his is a high-volume discount store which does much of its business with commercial establishments.

The Administrative Law Judge (ALJ) found inconsistencies in the testimony of petitioner's deliverer and an employee of the paint store as to how many cases were actually delivered. Furthermore, while the paint store was next door to Bride's Pub, the entrances were 50 feet apart. In sustaining this charge, the ALJ made no mention of petitioner's invoice and the contemporaneous canceled check from the paint store next door. But he did note a motive in that petitioner's discounted price for a case of Absolut vodka, even including sales tax, was about $28 less than Donnaca's retail price, and concluded that what the investigators had observed must have been a different delivery than the one the paint store had received from petitioner that day.

The second surviving charge stems from the same investigators' observations, four months later, of three separate instances where merchandise was carried in private automobiles from petitioner's store to other retail establishments in Nassau County. On April 20, 1993, these two investigators saw two cases of liquor being removed from the store and driven to Burgundy's bar in Hempstead. When confronted by the investigators inside the bar, the driver cooperated by providing a written statement in which he acknowledged delivering $200 worth of liquor (16 assorted bottles) to Burgundy's, where he was employed, but insisted that no one at petitioner's store had been aware of his connection with Burgundy's.

Later the same day, the SLA investigators followed another individual who drove five cases of liquor from petitioner's establishment to another liquor store, Ohio State Liquors, in Manorhaven. The courier in this instance was identified as an employee of Ohio State Liquors who acknowledged having purchased the assorted bottles from petitioner's store for cash, plus sales tax. This employee's principal denied any knowledge of the purchase at petitioner's, and denied ordering these bottles for pickup.

Three days later, the same investigators observed and fol-

lowed an individual who drove three cases to a bar and restaurant, Vinnie's Place, in Hempstead. The investigators questioned the owner of Vinnie's about this delivery. He was uncooperative, and offered no indication that petitioner had knowledge of the intended destination of this merchandise. When the owner failed to produce an invoice, the investigators confiscated six bottles of liquor.

In sustaining the second charge, the ALJ offered no analysis—indeed, made absolutely no mention—of these specifications, other than his recitation of the facts.

After conducting a hearing on such charges, respondent has the burden of sustaining its determination by "substantial evidence" (CPLR 7803 [4]). The proof in this case falls far short of that standard, on all four counts. Sales by a discount liquor store in case or multi-case lots are by no means unusual. The destination of 10 cases of alcoholic beverage on April 20 and 23, alone, is insufficient evidence of petitioner's involvement in an illegal scheme to sell its merchandise at wholesale (*Matter of Merson v New York State Liq. Auth.*, 223 AD2d 436). The ALJ is not permitted to "fill in the blanks" of an inadequate investigation in order to reach an inference that a violation of law had taken place.

The insufficiency of evidence makes it unnecessary for us to address petitioner's other points. Concur—Rosenberger, J. P., Wallach, Nardelli, Williams and Tom, JJ.