OPINION OF THE COURT
Jack M. Battaglia, J.
With a proposed order to show cause, the City of New York seeks ex parte a temporary closing order and a temporary restraining order with respect to commercial premises located on the ground floor of 1104 Pacific Street, Brooklyn, and a business operating on the premises as “Star Lounge.” The City is the named plaintiff in the summons and verified complaint on the underlying action, and the named defendants are “[t]he Land and Building Known as 1104 Pacific Street, Tax Block # 1134, Tax Lot # 44, County of Kings”; West Winds Convertibles International, Inc., the alleged owner of the described premises; and fictitiously named parties “intended [as] being the owners, lessees, operators, or occupants of the commercial establishment doing business as ‘Star Lounge’ on the ground floor” of the premises.
Pursuant to the Nuisance Abatement Law (see Administrative Code of City of NY, tit 7, ch 7) and article 63 of the CPLR, the City seeks temporary relief pending a hearing on its motion for a preliminary injunction. Specifically, the City asks that the court enjoin defendants, “their agents!,] employees and/or representatives, and any and all persons acting individually or in concert with them”:
“1. From the use and/or occupancy of the commercial establishment doing business as ‘Star Lounge,’ in the ground floor of 1104 PACIFIC STREET, Brooklyn, New York, for any purpose whatsoever and directing that said premises shall be closed, and that the New York City Police Department shall take all steps necessary to effectuate this closing order, including the use of reasonable force, and shall gain entry to the subject premises in order that an inventory of the personal property therein may be effectuated . . . ; and
“2. From removing or in any manner interfering with the furniture, fixtures and movable property *648 used in conducting, maintaining or permitting the nuisances complained of herein; and
“3. From conducting, maintaining, operating or permitting the subject premises to be used or occupied for the illegal sale of alcoholic beverages or for any other activity in violation of Article 123 of the Alcoholic Beverage Control Law.”
A “public nuisance” is defined to include “[a]ny building, erection or place . . . used for any of the unlawful activities described in section one hundred twenty-three of the alcoholic beverage control law” (Administrative Code § 7-703 [h]), and “[a]ny building, erection or place . . . wherein there is occurring a criminal nuisance as defined in section 240.45 of the penal law” (Administrative Code § 7-703 [Z]). The cited provision of the Penal Law describes the crime of criminal nuisance in the second degree as “knowingly conducting] or maintaining] any premises, place or resort where persons gather for purposes of engaging in unlawful conduct.” (Penal Law § 240.45 [2].)
The Nuisance Abatement Law specifically authorizes both a temporary closing order and a temporary restraining order as requested by the City, but only after a finding “by clear and convincing evidence” that a public nuisance is being “conducted, maintained or permitted,” and that “the public health, safety or welfare immediately requires” the granting of the orders. (See Administrative Code § 7-707 [a]; § 7-709 [a]; § 7-710 [a].) There is nothing in the law to suggest that “clear and convincing evidence” or “immediately requires” has any meaning for these purposes that is different from general law or understanding.
Purporting to make such showing, the City presents two affirmations of its counsel and the affidavits of two police officers. There is nothing in the affirmations of counsel to suggest that counsel has personal knowledge of any fact material to the showing required on this application. Even as to the identity of the owner of the building at 1104 Pacific Street, counsel states that defendant West Winds Convertibles International, Inc. “is the last recorded owner of the real property . . . according to a deed recorded in Kings County, Office of the New York City Register” (see affirmation, dated Apr. 13, 2007, ¶ 4), but counsel does not state who performed a search of recorded instruments or any other basis for the conclusion as to ownership.
The City’s showing depends, therefore, on the affidavits of Police Officer Christopher Clark and Police Officer James Ganly. *649 The affidavits are identical, except for the dates on which the officers visited the Star Lounge, made their observations, and “issued . . . summonses for violations of Alcoholic Beverage Control Sections 96.1 (Unlicensed Warehousing of Alcoholic Beverages), 64-b (Operating an Illegal Bottle Club) and 100.1 (Unlicensed Sale of Alcohol).” (See affidavit of Police Officer Christopher Clark 1Í 7; affidavit of Police Officer James Ganly 117.)
Officer Clark made his visit to the Star Lounge on January 27, 2007 and Officer Ganly made his visit on February 10, 2007. The court has no difficulty concluding that the affidavits establish prima facie that on those dates the premises would qualify as a dance club; that the sale, consumption, and warehousing of alcoholic beverages of various types were occurring; and that, if those activities were not permitted by appropriate license, the cited provisions of the Alcoholic Beverage Control Law were violated.
The problem is that there is no evidence, except perhaps by insufficient inference, that the activities were unlicensed. Each of the officers asserts, “Upon request, the operator of the subject premises was unable to produce a valid New York State Liquor Authority license that would permit the sale, consumption and/or warehousing of alcoholic beverages within the subject premises.” (Affidavit of Police Officer Christopher Clark 1Í 6; affidavit of Police Officer James Ganly 1Í 6.) But the failure to produce a license is not the same as not having one.
There is nothing in the affirmations or affidavits submitted that indicates that any inquiry was made to the State Liquor Authority as to the licensed status of West Winds Convertibles International, Inc., “Star Lounge,” or any other person or entity conducting business at 1104 Pacific Street. There is no explanation as to why, in the 372 months from Officer Ganly’s February 10 visit to the submission of the proposed order on May 22, it was not possible to obtain a certificate such as that described in CPLR 4521, which would have provided prima facie evidence of the lack of the license. There is no statement that either Officer Clark or Officer Ganly revisited the location, and no information on the disposition of the summonses that were issued in January and February.
The court does not suggest that Officer Clark and Officer Ganly did not have sufficient reason to issue the summonses. And, as will appear, the failure to display a license also violates the statute (although no showing is made of that by the City). *650 But it cannot be fairly contended that the failure to display a license that has in fact been issued has any appreciable effect on the public health, safety, or welfare, or that it constitutes “clear and convincing evidence” that no license exists.
The type of evidence that a court might require of the City should be determined in part by the type of evidence that might realistically be obtained in a brief enough period of time so as not to undermine that purpose for which it is sought. Particularly when an order is sought allowing police action without notice, which carries its own risks to public health, safety, and welfare, it does not seem too much to require the City to ask the appropriate state authority to confirm that no license exists.
The City fares no better on its alternate nuisance ground, the maintenance of a place “where persons gather for purposes of engaging in unlawful conduct.” (See Penal Law § 240.45 [2]; Administrative Code § 7-703 [Z].) Among other reasons, and assuming that patrons of an unlicensed club “gather for purposes of engaging in unlawful conduct,” here again there is no proof of the “unlawful conduct.”
Failing to establish by “clear and convincing evidence” that the operation of Star Lounge constitutes a public nuisance, the City also fails to show that public health, safety, or welfare “immediately requires” that it be closed. Nowhere in the City’s papers is there a description of any effect on public health, safety, or welfare of unlicensed clubs generally or this one in particular. Other than conclusory statements in counsel’s affirmation and the officers’ affidavits that continued operation of the club threatens or interferes with “the health, safety, and well-being of those who live and work in the surrounding neighborhood, as well as their business patrons” (see affirmation, dated Apr. 13, 2007, 11 24; affidavit of Police Officer Christopher Clark 1Í 8; affidavit of Police Officer James Ganly 11 8), there is no evidence of such effects. For purposes of a temporary closing order or temporary restraining order, the existence of the public nuisance alone is not sufficient; the statute itself mandates a finding that the order is “immediately” required.
The City offers no explanation or rationale for why the public health, safety, or welfare “immediately requires” the orders requested when 3V2 months have passed since the most recent evidence, if such it is, that the club is operating unlawfully. The City apparently expects, with some justification, that courts presented with nuisance abatement proceedings give *651 deference to the training, experience and judgment of law enforcement and counsel. The failure to act, or significant delay in doing so, must likewise be assessed by a court in determining the “immediacy” required for extraordinary judicial action.
In attempting to justify ex parte relief, the City stresses the importance of “preserving evidence consisting of furniture, fixtures, and moveable property which may have been used to conduct and/or facilitate the nuisance.” (See affirmation, dated May 22, 2007, 1Í 5.) The City argues further that “the granting of notice may endanger the safety of police officers and civilian attorneys employed by the Police Department who are mandated to serve and enforce” closing and restraining orders. (Id. H 6.) The court recognizes the importance of these purposes, but also recognizes the danger to safety of the police and others by the use of police force without notice, and the importance of avoiding danger unless there is clear evidence of criminal activity that itself presents an immediacy of serious harm.
Although the City has not made the requisite showing for a temporary closing order and temporary restraining order, the order to show cause might yet issue in support of the City’s motion for a prehminary injunction. Generally, “The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor.” (Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; see also Doe v Axelrod, 73 NY2d 748, 750 [1988] [“a likelihood of ultimate success on the merits”]; Ingenuit, Ltd. v Harriff, 33 AD3d 589, 589 [2d Dept 2006].) The movant has the burden of showing a “clear” and “undisputed” right to preliminary relief “upon the moving papers.” (See Ishaq v Batra, 170 AD2d 436, 436 [2d Dept 1991] [internal quotation marks and citation omitted].)
The Nuisance Abatement Law does not itself provide for any particular requirements for the issuance of a preliminary injunction, other than that “[t]he corporation counsel shall show, by affidavit and such other evidence as may be submitted, that there is a cause of action for a permanent injunction abating a public nuisance.” (See Administrative Code § 7-708; see also § 7-707.) “The existence of an adequate remedy at law shall not prevent the granting of temporary or permanent relief’ pursuant to the Law (§ 7-706 [a]).
Relying primarily on decisions involving enforcement of zoning ordinances (see, e.g., City of New York v Bilynn Realty Corp., *652 118 AD2d 511, 512-513 [1st Dept 1986]; Town of Islip v Clark, 90 AD2d 500, 501 [2d Dept 1982]; City of Utica v Ortner, 256 App Div 1039, 1039 [4th Dept 1939]), the City contends that “[s]ince [it] is seeking injunctive relief pendente lite under the Administrative Code and the Nuisance Abatement Law a showing of immediate and irreparable injury is not a prerequisite to the injunctive relief sought herein.” (See affirmation, dated Apr. 13, 2007, 11 22.) The City is correct that “[t]o obtain preliminary injunctive relief based on a violation of its zoning ordinances, a town need only show that it has a likelihood of ultimate success on the merits and that the equities are balanced in its favor.” (See First Franklin Sq. Assoc., LLC v Franklin Sq. Prop. Account, 15 AD3d 529, 533 [2d Dept 2005]; see also Village of Chestnut Ridge v Roffino, 306 AD2d 522, 524 [2d Dept 2003].)
Courts have held likewise in cases involving violation of environmental control laws (see State of New York v Sour Mtn. Realty, 276 AD2d 8, 15-16 [2d Dept 2000]; State of New York v Izzo, 216 AD2d 456, 457 [2d Dept 1995]), or other land use measures (see Town of Riverhead v County of Suffolk, 39 AD3d 537, 539 [2d Dept]; County of Westchester v United Water New Rochelle, 32 AD3d 979, 980 [2d Dept 2006]). Although there is dictum in a 1938 Court of Appeals decision that indicates that, in effect, a presumption of irreparable injury exists whenever there is a violation of a statute that expressly authorizes injunctive relief (see People ex rel. Bennett v Laman, 277 NY 368, 383-384 [1938]), the City has not supported, nor has the court’s research revealed, applicability of the principle outside the relatively narrow area of zoning and land use.
Specifically, except for an action basing a nuisance on a violation of a zoning ordinance (see City of New York v Falack, 175 AD2d 853 [2d Dept 1991]), the court is not aware of any appellate decision that dispenses with any showing of irreparable injury in statutory nuisance abatement actions. Trial courts have, however, suggested that a showing of irreparable injury be dispensed with in actions under the Nuisance Abatement Law. (See City of New York v Times’ Up, Inc., 11 Misc 3d 1052[A], 2006 NY Slip Op 50189[U], *5 [Sup Ct, NY County 2006]; City of New York v Andrews, 186 Misc 2d 533, 539 n 3 [Sup Ct, Queens County 2000].)
But there are nuisances and there are nuisances. Even violations of the Alcoholic Beverage Control Law range from those that “adversely affected the health, welfare, safety of the inhabitants of the area” so as to warrant revocation of the license *653 (see Matter of La Trieste Rest. & Cabaret v New York State Liq. Auth., 249 AD2d 156, 156 [1st Dept 1998]; see also Matter of Verney v New York State Liq. Auth., 94 NY2d 779 [1999]), to “technical” violations that only warrant a one-day suspension (see Matter of Jonathan Neil Corp. v State Liq. Auth., 112 AD2d 70, 72 [1st Dept 1985]; Matter of Zenith Wine & Liq. v State Liq. Auth., 91 AD2d 666 [2d Dept 1982]).
Here, the only violation for which the City provides any direct evidence is failure to conspicuously display the license. (See Alcoholic Beverage Control Law § 114 [6].) In a case in which such a violation was found, together with a violation of a provision stating that no licensee “shall . . . suffer or permit such premises to become disorderly” (see Alcoholic Beverage Control Law § 106 [6]), the court upheld an alternate sanction of a $2,000 civil penalty or a 10-day suspension, plus forfeiture of a $1,000 bond. (See Matter of Warehouse Entertainment v New York State Liq. Auth., 269 AD2d 278 [1st Dept 2000].) It may be that a failure to conspicuously display a license is not a public nuisance at all, because it is not an “unlawful activit[y]” described in section 123 of the Alcoholic Beverage Control Law (see Administrative Code § 7-703 [h]), and the question of irreparable injury is academic.
But defendants are not charged with a failure to conspicuously display a license; they are charged with conducting business without a license. The question is whether the City is “likely” or “probable” to succeed in establishing those violations, or, more accurately, whether the City has made a sufficient showing on its application for an order to show cause, and, if so, whether it has also made a sufficient showing that the balance of equities will weigh in its favor.
The CPLR provides that “[t]he court in a proper case may grant an order to show cause, to be served in lieu of a notice of motion, at a time and in a manner specified therein.” (CPLR 2214 [d].) “There is no specific definition of a proper case, and it is obvious that the legislative intent was to leave that question entirely within the court’s discretion.” (Mallory v Mallory, 113 Misc 2d 912, 913-914 [Sup Ct, Nassau County 1982].) Although in exercising that discretion the court may, if not must, make some assessment of the merits (see id. at 914), the court “does not have the authority to make a final determination on the motion” (see Bush v 280 Park Ave. S. Assoc., 2003 NY Slip Op 50758[U], *2 [App Term, 2d Dept 2003]).
Here, again, the only evidence of statutory violations involving the unlicensed warehousing, sale, and consumption *654 of alcoholic beverages is the strength of the inference that arises from the inability to produce a license when requested to do so by a police officer. Against that inference is the ease with which near-conclusive evidence of unlicensed status could be obtained from the State Liquor Authority. The court concludes that it “is not permitted to ‘fill in the blanks’ of an inadequate investigation in order to reach an inference that a violation of law ha[s] taken place.” (See Matter of Henry St Liqs. v New York State Liq. Auth., 227 AD2d 258, 260 [1st Dept 1996].)
As to the balance of the equities, all the City has offered is that:
“The subject premises is currently being operated, occupied and used illegally and thus, no legitimate interest of defendants will be harmed by an injunction. In contrast, the City of New York, and the public at large which it is required to protect, will benefit greatly if the activities in violation of the Alcoholic Beverage Control Law are eliminated from the subject premises.” (Affirmation, dated Apr. 13, 2007, 11 28.)
The City’s argument on the equities depends entirely, therefore, on its allegations of unlicensed operation, and, as has been determined, its evidence in support of those allegations has been found wanting. This is not a case “[w]here . . . the denial of injunctive relief would render the final judgment ineffectual,” so that “the degree of proof to establish the element of likelihood of success on the merits should be reduced.” (See State of New York v City of New York, 275 AD2d 740, 741 [2d Dept 2000].) And, although the closing of a business may not be as “drastic [a] remedy” as destroying a building, so as to require particularly weighty equities on the other side (see Matter of Angiolillo v Town of Greenburgh, 21 AD3d 1101, 1104 [2d Dept 2005]), it is hardly inconsequential, particularly if in error. A private party seeking such relief might well be required to post an appropriate undertaking. (See CPLR 6312 [b].)
By denying the City’s application, the result is that the City must commence the action as required by the Nuisance Abatement Law (see Administrative Code § 7-706 [c], [d]), and then move by notice of motion, or order to show cause if circumstances suggest, for preliminary relief. There is nothing in the *655 City’s application that requests a modification of the service requirements, or a justification for it, and it would appear, therefore, that the only consequence is delay. But, again, the City has waited approximately 3x/2 months to bring this application.
The City’s application for order to show cause is denied.