OPINION OF THE COURT
Jack M. Battaglia, J.
Based upon two isolated sales of a single pack of “untaxed” cigarettes and the confiscation, pursuant to a search warrant, of an additional 12 packs, all of which took place more than four months ago, the City of New York applies to this court to authorize its Police Department to immediately, and without notice, use force to close for all purposes the “commercial establishment” at which the cigarettes were sold and found. Because the court finds the application to be substantially devoid of merit, the court denies the application.
With a proposed order to show cause, the City of New York seeks ex parte a temporary closing order and a temporary restraining order with respect to “the commercial establishment doing business on the ground floor” at 283 Ralph Avenue, Brooklyn, as “Family Grocery Corp.” The City is the named plaintiff in the summons and complaint on the underlying action, and the named defendants include Zhen Wu Weng and Mei Zhen Li, the record owners of the real property at 283 Ralph Avenue, and “fictitiously named parties . . . intended being the owners, lessees, operators or occupants of ‘Family Grocery Corp.’ ” Service of the summons and complaint would be made with service of the order to show cause.
Pursuant to the Nuisance Abatement Law (see Administrative Code of City of NY, tit 7, ch 7) and article 63 of the CPLK, the City seeks temporary relief pending a hearing on its motion for a preliminary injunction. Specifically, the City asks that the court enjoin defendants, “their agents, employees and/or representatives, and any and all persons acting individually or in concert with them”:
“1. From the use and/or occupancy of the subject premises at 283 RALPH AVENUE, Brooklyn, New York for any purpose whatsoever and directing that said premises shall be closed, and that the New York City Police Department shall take all steps neces *1006 sary to effectuate this closing order, including the use of reasonable force, and shall gain entry to the subject premises in order that an inventory of the personal property therein may be effectuated . . . ; and
“2. From removing or in any manner interfering with the furniture, fixtures and movable property used in conducting, maintaining or permitting the nuisance complained of herein; and
“3. From conducting, maintaining, operating or permitting the subject premises to be used or occupied for illegal sale or storage of untaxed cigarettes, in violation of Article 37 Section 1814 of the New York State Tax Law.”
A “public nuisance” is defined in the statute to include “[a]ny building, erection or place . . . used for the purpose” of specified criminal offenses, such as prostitution, obscene performances, promotion of obscene material, or violation of drug or alcoholic beverage control laws (see Administrative Code § 7-703 [a], [b], [c], [g], [h]), and includes “[a]ny building, erection or place . . . wherein there is occurring a criminal nuisance as defined in section 240.45 of the penal law” (Administrative Code § 7-703 [1]). The cited provision of the Penal Law describes the crime of criminal nuisance in the second degree as “knowingly conducting] or maintaining] any premises, place or resort where persons gather for purposes of engaging in unlawful conduct.” (Penal Law § 240.45 [2].)
The Nuisance Abatement Law specifically authorizes both a temporary closing order and a temporary restraining order as requested by the City, but only after a finding “by clear and convincing evidence” that a public nuisance is being “conducted, maintained or permitted,” and that “the public health, safety or welfare immediately requires” the granting of the orders. (See Administrative Code of City of NY § 7-707 [a]; § 7-709 [a]; § 7-710 [a].) There is nothing in the law to suggest that “clear and convincing evidence” or “immediately requires” has any meaning for these purposes that is different from general law or understanding.
The City purports to make the requisite showing with the affidavit of a police officer and the affirmation of its counsel. The only basis for the City’s contention that a “public nuisance” exists at 283 Ralph Avenue is that an alleged “criminal nuisance” is occurring there (see Administrative Code § 7-703 [1]) in that *1007 the property is a “premises, place or resort where persons gather for purposes of engaging in unlawful conduct” (see Penal Law § 240.45 [2]) — the “unlawful conduct” being the “illegal sale and/or storage of untaxed cigarettes” in violation of section 1814 of the Tax Law. (See affirmation ¶¶ 11-14.)
In an affidavit dated October 3, 2007, Police Officer Derek Knorr provides evidence of the sale of “one (1) pack of untaxed Newport cigarettes” on May 21, 2007; the sale of “one (1) pack of untaxed Newport cigarettes” on June 5, 2007; the confiscation of “twelve packs of untaxed cigarettes” on execution of a search warrant on June 14, 2007; and the arrest on June 14 of three persons for violation of section 1814 of the Tax Law. The names of the persons arrested are not given in the affidavit. One name appears on an attached Property Clerk’s invoice, but it is not the name of either of the record owners of 283 Ralph Avenue.
The Police Officer’s affidavit makes no mention of the “public health, safety or welfare” (see Administrative Code § 7-707 [a]; § 7-709 [a]; § 7-710 [a]). The affirmation of counsel asserts, “Upon information and belief, the community and neighboring business [es] have severely suffered and continue to suffer as a result of the illegal sale and warehousing of untaxed cigarettes within the subject premises,” and that “the public welfare requires the immediate abatement of the public nuisance by an order closing the premises against all use pending the determination of this action.” (Affirmation IN 24, 32.) Counsel provides no evidentiary support for these conclusory statements, or for the contention that “the subject premises is a serious public nuisance, and as such should not be allowed to remain open one more day.” (See id. ¶ 11.) Counsel provides no explanation for the delay of more than four months between June 14, the date of the last documented violation of the tax statute, and October 23, the date of the City’s application.
Counsel also asserts that “[t]he owners of the premises new [szc] or should have known of the illegal activity,” citing an attached “notice letter” allegedly “sent to the owners.” The attached letter, dated July 19, 2007, is addressed to only one of the two owners of the property, and is not accompanied by sufficient proof that it was mailed (see Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679, 680 [2d Dept 2001]; see also New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d 547, 547-548 [2d Dept 2006]). The court fails to understand, moreover, how a letter in July can provide notice of activities in May and June; the letter does not even note the June arrests.
*1008 Similarly, counsel asserts that “[d] espite numerous summonses, arrests and notice, the operators continue to sell and warehouse untaxed cigarettes.” Not only is there a lack of any summonses or arrests, other than the arrests on June 14, there is absolutely no evidence that even a single sale of untaxed cigarettes has been made since June 5. Such an unsupported statement on a fact so highly material to the drastic relief the City is seeking is, at the least, inappropriate.
Turning to the law, there is also, at the least, a serious question as to whether a violation of Tax Law § 1814 of the kind involved here could ever support a nuisance abatement order. For purposes of determining whether a violation of any provision of section 1814 has been shown, the court will assume that the “untaxed” cigarettes described in Police Officer Knorr’s affidavit were not stamped with a “NYC/NYS tax stamp.” (See affidavit ¶ 3.)
Tax Law § 1814 contains 19 separate subdivisions or paragraphs, describing crimes of various degrees of severity, but neither the Police Officer’s affidavit nor counsel’s affirmation specifies the crime that purportedly supports the charge of criminal nuisance. Attached to the affidavit, however, are Property Clerk invoices that reference subdivision (d) as the “Charge/Offense Under Investigation.” That provision malees it a crime to “possess[ ] or transport[ ] for the purpose of sale any unstamped . . . packages of cigarettes subject to tax,” or to “sell[ ] or offer [ ] for sale unstamped or unlawfully stamped packages of cigarettes.” {See Tax Law § 1814 [d].) The first offense is a misdemeanor; a second offense within five years is a felony. {See id.)
If the “commercial establishment doing business on the ground floor” at 283 Ralph Avenue is to be deemed a “place . . . wherein there is occurring a criminal nuisance” {see Administrative Code § 7-703 [1]), there must be a finding that it is a “place . . . where persons gather for purposes of engaging in unlawful conduct” {see Penal Law § 240.45 [2]). The question then becomes whether a place Where a person “sells or offers for sale unstamped . . . packages of cigarettes” or “possesses . . . for the purpose of sale any unstamped . . . packages of cigarettes” {see Tax Law § 1814 [d]) is a “place . . . where persons gather for purposes of engaging in unlawful conduct” {see Penal Law § 240.45 [2]).
Subdivision (d) of Tax Law § 1814 does not make it a crime to purchase or possess unstamped cigarettes, but subdivision (a) *1009 makes it a misdemeanor to “wilfully attempt[ ] in any manner to evade or defeat” the cigarette tax or the “payment thereof.” (See Tax Law § 1814 [a] [1], [2].) The statute has been interpreted to make it a crime to possess cigarettes for personal use, with the requisite intent, but only 400 cigarettes or more, and only after 24 hours without payment of the tax. (See People v McKelvey, NYLJ, Dec. 23, 2005, at 23, col 1, 2005 NY Misc LEXIS 3569, *12-13 [Crim Ct, Kings County 2005]; People v Tracy, 1 Misc 3d 308, 312-313 [Watertown City Ct 2003].) (For the benefit of those fortunate enough not to know, cigarettes are usually packaged for sale in packs of 20 and in cartons of 10 packs; 400 cigarettes, therefore, would be found in two cartons.) There is no tax liability to the purchaser, and therefore no criminal liability, at the time and place of retail purchase, no matter how many cigarettes are purchased.
Only by giving the broadest meaning to “place . . . where persons gather for purposes of engaging in unlawful conduct” in Penal Law § 240.45 (2) can a market that sells “untaxed” cigarettes at retail be deemed the site of a “criminal nuisance.” Beyond the meaning of the words, moreover, is the context. “Unlawful conduct” for purposes of subdivision (2) of Penal Law § 240.45 must be understood in the context of the provision as a whole. (See Cummings v Board of Educ. of City of N.Y., 275 App Div 577, 585-586 [1st Dept 1949], affd 300 NY 611 [1949]; Matter of New York State Multi-Hous. Laundry Assn. v Hartnett, 180 AD2d 892, 893 [3d Dept 1992].)
Penal Law § 240.45 provides for two alternative sets of elements for the crime of criminal nuisance: the elements relied upon by the City here, that is, “knowingly conduct[ing] or maintaining] any premises, place or resort where persons gather for purposes of engaging in unlawful conduct” (see Penal Law § 240.45 [2]); and “[b]y conduct either unlawful in itself or unreasonable under the circumstances, . . . knowingly or recklessly creating] or maintaining] a condition which endangers the safety or health of a considerable number of persons” (see Penal Law § 240.45 [1]). The requirement of “endanger[ment] [of] the safety or health of a considerable number of persons” is consistent with notions of public nuisance at common law. (See People v Rubenfeld, 254 NY 245, 247 [1930]; Melker v City of New York, 190 NY 481, 488 [1908] [“The primary meaning of the word (nuisance), suggested by its derivation, is that which injures, or, in the quaint phrase of ancient times, ‘that which worketh hurt’ ”].)
*1010 Penal Law § 240.45 (2) derives from Penal Law of 1909 § 1530 (2), which penalized conduct that “offends public decency.” (See People v Fiedler, 31 NY2d 176, 181 [1972].) As applied to places where unlawful conduct takes place, “The State punishes the offense of inducing vice, rather than the vice itself; the indecency of such inducement — the injury to the public morals — constitutes the gist of the offense.” (See People v Vandewater, 250 NY 83, 93 [1928].) Whether or not the unlawful conduct is itself a violation of law is a “distinction . . . only superficial.” (See id.; see also Klinkenstein v Third Ave. Ry. Co., 246 NY 327, 333 [1927].)
Tax Law § 1814 (a) and (d), and the provisions of article 20 to which they refef, are what they purport to be, “Tax Laws,” designed to raise revenue. There is nothing that suggests a legislative purpose or intent to protect “the safety or health of a considerable number of persons.” (See Penal Law § 240.45 [1].) One can hardly contend that the harmful effects of cigarette smoking are somehow ameliorated when the cigarettes have been taxed. Any suggestion that, by increasing the purchase price of cigarettes, the tax provides a disincentive to purchase and use them would be speculative, tenuous, and remote, and worthy of no more weight than a suggestion that the tax on fast food products shown to present health risks is a public health measure.
It is this court’s view that neither the retail sale of unstamped cigarettes, nor the possession of unstamped cigarettes for the purpose of retail sale, nor the retail purchase or possession of unstamped cigarettes for use is “unlawful conduct” within the meaning of Penal Law § 240.45 (2), and that a “place” where that conduct occurs is not, therefore, a criminal nuisance as a “place . . . where persons gather for purposes of engaging in unlawful conduct.” It follows that such a place, like the subject of this proceeding, is not a “public nuisance” for purposes of Administrative Code § 7-703 (1).
Even if this view is wrong, however, thé City may not obtain a temporary closing order or a temporary restraining order as to the operation of “Family Grocery Corp.” at 283 Ralph Avenue, unless it has shown “by clear and convincing evidence that . . . the public health, safety or welfare immediately requires” it. (See Administrative Code § 7-709 [a]; § 7-710 [a].) The sale of two packs of “untaxed” cigarettes and the possession of 12 more, which in total is less than the 20 packs a purchaser may possess for use without tax liability, provides the basis for no *1011 inference that the continued operation of “Family Grocery Corp.” will have any effect upon the “public health, safety or welfare.” As previously noted, the City makes no showing of any actual effect upon the public health, safety or welfare.
Nor has the City provided any explanation for the four-month delay from the last documented violation of Tax Law § 1814 (d) and the making of this application. The court cannot reconcile that delay with the City’s contention that the public health, safety or welfare “immediately requires” the drastic relief applied for. This court’s position on the consequence of delay to the City’s application can come as no surprise to the City. (See City of New York v West Winds Convertibles Intl., Inc., 16 Misc 3d 646, 650-651 [Sup Ct, Kings County 2007].)
The court’s determination that the City is not entitled to a temporary closing order or temporary restraining order would not necessarily preclude the issuance of the proposed order to show cause, limited to the scheduling for hearing the City’s motion for a preliminary injunction. Generally, “[t]he party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor.” (Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]; see also Doe v Axelrod, 73 NY2d 748, 750 [1988] [“a likelihood of ultimate success on the merits”]; Ingenuit, Ltd. v Harriff, 33 AD3d 589, 589 [2d Dept 2006].) The movant has the burden of showing a “clear” and “undisputed” right to preliminary relief “upon the moving papers.” (See Ishaq v Batra, 170 AD2d 436, 436 [2d Dept 1991] [internal quotation marks and citation omitted].)
Even giving due consideration to the more flexible application of these factors in nuisance cases, and mindful that a motion is not to be determined on application for an order to show cause (see City of New York v West Winds Convertibles Intl., Inc., 16 Misc 3d at 651-654), the court concludes that the City has not made a sufficient showing to warrant scheduling a hearing on its motion for a preliminary injunction. The reasons should be apparent; in short, the City cannot succeed on the merits of its motion on the papers submitted, and the equities clearly favor the putative defendants.
The City’s application for the issuance of the proposed order to show cause is denied.